IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**MARIA BARNHART**

    **Plaintiff,**

v.

**CORNERSTONE BUILDING
BRAND SERVICES, INC., and**

    **Defendants.**

Civil Action No.: 2:25-cv-00613
Judge: _____

## COMPLAINT

NOW COMES the Plaintiff, Maria Barnhart, by counsel, Philip A. Reale, II and the Law Office of Philip A. Reale, PLLC, and for her Complaint against the above-named Defendants states as follows:

### Parties, Jurisdiction, and Venue

1. The Plaintiff, Maria Barnhart, is and was at all times relevant hereto, a resident of Parkersburg, Wood County, West Virginia.

2. Defendant Cornerstone Building Brand Services, Inc., is a Delaware corporation that maintains its principal offices in Cary, North Carolina.

3. Jurisdiction is properly vested with this Court pursuant to 28 U.S.C. §1332, in that there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

4. Venue is properly vested with this Court pursuant to 28 USC §1441 in that a substantial part of the events or omissions giving rise to the claim occurred in Parkersburg, Wood County, West Virginia.

**Facts**

5. In October 2006, Plaintiff was hired by Defendant's predecessor in interest, Simonton Windows, where Plaintiff worked as an associate product manager.

6. In or about 2018, through a series of mergers and acquisitions of Plaintiff's employer, Plaintiff became an employee of Defendant.

7. At all relevant times, Plaintiff performed her work duties in a satisfactory manner.

8. In or about November 2022, Plaintiff, entered into a Voluntary Separation Agreement ("VSP") with Defendant in which Defendant paid Plaintiff, among other things, 20 weeks base salary ($36,489.29) to voluntarily leave their employment. A true and accurate copy of the VSP is attached hereto as "Exhibit 1."

9. To qualify for a VSP at the time, an employee had to have either: (1) five (5) or more years of service or were fifty (50) years old or older by December 31, 2022; or (2) at least one year of service with a combination of years of service and age total 60 or more by December 31, 2022. Plaintiff qualified under both VSP qualification criteria. Exh. 1.

10. Likewise, Plaintiff is a member of a protected class in that she is over the age of 40 as defined in W. Va. Code §16B-17-3.

11. There was an "Exhibit to Agreement Voluntary Separation Program Information Addendum" appended to the VSP. Specifically, as part of that Exhibit, there was a section entitled "REHIRE." Exh. 1.

12. The REHIRE section provides as follows:

   **Will I be eligible for rehire?**

   Yes.

   **Might I be recalled if a vacancy occurred in the future?**

   When vacancies occur, individuals qualified for the vacancies are encouraged to apply.

Exh. 1, p. 14 (emphasis in original).

13. According to the VSP, Plaintiff was eligible for rehire by the Defendant and, in fact, was "encouraged to apply."

14. Approximately 18 months later, because of what her VSP said, Plaintiff did just that. On or about March 2024, a Field Service Manager position with Defendant was posted for which Plaintiff applied – as she was encouraged to do through her VSP.

15. Plaintiff is extremely qualified and excelled in the interview process and was notified by Jeff Holloway, Director of Field Services for Defendant, that he was prepared to offer her the position pending final approval by the human resources department.

16. On April 16, 2024, via virtual meeting through Microsoft Teams, Mr. Holloway informed Plaintiff that he could no longer pursue hiring her. Mr. Holloway explained that Kelly Louks, a human resources manager for Defendant, communicated that to him and that she was directed by Cheryl Mikolay, Vice President of Human Resources for Defendant, that Plaintiff was not eligible for rehire because she had entered into the VSP, and that individuals who entered into VSP agreements were specifically not eligible for rehire.

17. This directly contradicts the Exhibit to Plaintiff's VSP, which very clearly states: "Will I be eligible for rehire? Yes." See Exh. 1.

3

18. Mr. Holloway expressed his disappointment in being unable to hire Plaintiff, because he felt she was the best candidate.

19. Plaintiff, shocked at this development, and knowing what her VSP said relative to her eligibility for rehire, contacted Ms. Mikolay directly seeking answers.

20. On April 18, 2024, at 2:33 p.m., Ms. Mikolay responded to an email stating that she "need[s] to connect with the team to further understand the situation" and that "someone will be in touch."

21. Approximately one hour later, Mr. Holloway contacted Plaintiff by phone to tell her that because of what he was instructed concerning Plaintiff's eligibility, he found someone else that was qualified and hired that person. Upon information and belief, that person was significantly younger and less qualified for the position than Plaintiff.

22. On April 23, 2024, Plaintiff had a call with Ms. Mikolay to get an explanation as to the discrepancy between Ms. Mikolay's denial of Plaintiff's hire due to the VSP, even though the VSP clearly said that Plaintiff was eligible for rehire.

23. Ms. Mikolay told Plaintiff directly that it was a violation of Cornerstone policy to extend an offer because she had entered into a VSP (i.e., against policy to hire people over 50 years of age) and that the position was given to another candidate because they had been offered to someone else that was not affected by this "policy."

24. Ms. Mikolay repeated time and again that the only reason that Plaintiff was not hired was because of the VSP, and that it was policy of Defendant not to rehire people who entered into a VSP – which is given to individuals who Defendant incentivizes to leave their employment voluntarily based upon their age.

4

25. As such, Ms. Mikolay made clear that it is the policy of Defendant not to hire individuals over the age of 50, who were incentivized to leave their employment through a VSP.

26. The decision not to hire Plaintiff was based solely, or in part, on the basis of Plaintiff's age by the very qualification of Defendant's VSP agreement and alleged "policy."

27. During this same time period, Plaintiff had been working as a contractor through Addison Group, a company that specializes in providing temporary workers to companies on a contract basis, for Defendant.

28. Plaintiff feared that Defendant would retaliate against her and have her contract through Addison Group terminated for asking questions about Defendant's discriminatory "policy" on not hiring qualified individuals over the age of 50.

29. On April 17, 2024, Plaintiff contacted Sidney Stevens with Addison Group to express her concerns and explained the status of her application for the Field Services Manager position with Defendant.

30. Plaintiff expressed that she feared that Defendant would decide, because she asked questions about Defendant's discriminatory "policy" that they would terminate her contract.

31. Ms. Steven stated that Plaintiff was an employee of Addison Group and that she did not believe that scenario would occur. To help ease her mind even further, Ms. Stevens explained that Addison Group had received a lot of requests for contract services (the task that Plaintiff was performing) and that there was a need for Plaintiff's services.

32. Then, on April 24, 2024, one day after Plaintiff's call with Cheryl Mikolay, Defendant's Vice President of Human Resources, Plaintiff was notified via Teams meeting with Alyssa Leonard and Casey Retke, human resources employees for Defendant, that they would be ending her Addison Group contract with Defendant effective immediately.

33. The same day, Plaintiff contacted Ms. Stevens with Addison Group to notify them of Defendant's retaliatory and discriminatory conduct. Ms. Stevens indicated that Defendant did not consult them before taking such action.

34. On May 3, 2024, Plaintiff had a follow-up call with Ms. Stevens to inquire as to the reason for the abrupt termination of her contract with Defendant. Ms. Stevens stated that "there was an issue with a VSP" that Plaintiff had signed – clearly signaling Defendant's retaliatory motive for terminating Plaintiff's contract.

35. Any other non-discriminatory reason given for Plaintiff's non-hire and termination of her contract with Addison Group is purely pretextual.

36. Plaintiff, in an attempt to mitigate her damages was able to secure a new job, but for significantly less money than the position she would have been hired for with Defendant but for its unlawful and discriminatory actions.

**Count I – Violation of the West Virginia Human Rights Act (Age Discrimination)**

37. Plaintiff incorporates by reference and reasserts all previous allegations contained in this Complaint as if fully set forth herein.

38. Defendants Cornerstone employs more than 12 persons and is an employer within the meaning of the West Virginia Human Rights Act ("WVHRA"), W. Va. Code §16B-17-3.

39. Plaintiff is a person within the meaning of the WVHRA.

40. Plaintiff is a member of a protected class in that she is over the age of forty years old.

41. Defendant made an adverse decision concerning Plaintiff in failing to hire her and by terminating her contract with Addison Group.

42. But for Plaintiff's protected status, the adverse decision would not have been made.

43. Defendant's discriminatory conduct, including the decision not to hire Plaintiff after expressing a desire to do so and terminating her contract with Addison Group prematurely, constituted unlawful discriminatory practices under the WVHRA.

44. Defendant's actions and/or inactions were willful, wanton, and/or intentional and were undertaken with reckless disregard and indifference to the rights of Plaintiff.

45. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer economic damages, including past, present, and future lost wages and benefits, in an amount to be determined by a jury.

46. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer emotional damages, including humiliation, mental pain and suffering, emotional distress, and embarrassment, in an amount to be determined by a jury.

47. As a result of Defendant's unlawful discriminatory practices, Plaintiff is entitled to costs of litigation, including reasonable attorney fees and costs pursuant to the WVHRA.

48. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer damages and is entitled to all other legal or equitable relief that this Court may deem appropriate.

## Count II – Violation of the West Virginia Human Rights Act (Retaliation)

49. Plaintiff incorporates by reference as reasserts all previous allegations contained in this Complaint as if fully set forth herein.

50. Defendant harbored animus against Plaintiff because Plaintiff had opposed Defendant's unlawful and discriminatory practices.

51. Defendant engaged in acts of retaliation and reprisal against Plaintiff by terminating her Addison Group contract in violation of W. Va. Code §16B-17-9.

52. Defendant's discriminatory conduct followed her protected activity in such proximity of time as to clearly infer a retaliatory motive.

53. Defendant's actions and/or inactions were willful, wanton, and/or intentional and were undertaken with reckless disregard and indifference to the rights of Plaintiff.

54. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer economic damages, including past, present, and future lost wages and benefits, in an amount to be determined by a jury.

55. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer emotional damages, including humiliation, mental pain and suffering, emotional distress, and embarrassment, in an amount to be determined by a jury.

56. As a result of Defendant's unlawful discriminatory practices, Plaintiff is entitled to costs of litigation, including reasonable attorney fees and costs pursuant to the WVHRA.

57. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiff has suffered and will continue to suffer damages and is entitled to all other legal or equitable relief that this Court may deem appropriate.

## Count III - Intentional Infliction of Emotional Distress

58. Plaintiff incorporates by reference as reasserts all previous allegations contained in this Complaint as if fully set forth herein.

59. Defendant's wrongful conduct was so extreme, outrageous, and intolerable as to offend against the generally accepted standards of decency.

60. The Defendants acted with the intent to inflict emotional distress upon Plaintiff or acted recklessly when it was certain or substantially certain that emotional distress would result from their unlawful actions and conduct.

61. The actions of Defendant caused the Plaintiff to suffer emotional distress, which was so severe that no reasonable person could be expected to endure it.

62. As a direct and proximate result of the Defendants' outrageous conduct, Plaintiff has suffered severe emotional distress and is entitled to actual and punitive damages in an amount to be determined by a jury at trial.

63. As a result of Defendant's actions that were undertaken in bad faith, vexatiously, wantonly, and/or for oppressive reasons, Plaintiff is entitled to her costs of litigation, including attorney fees and costs. *Sally-Mike Properties v. Yokum*, 365 S.E.2d 246 (W. Va. 1986).

## **Damages**

64. As a direct and proximate result of Defendants' wrongful conduct, as more fully described above, Plaintiff is entitled to recover the following damages:

   a. Compensatory damages set forth in this Complaint, including past, present, and future lost wages;

   b. General damages for embarrassment, humiliation, annoyance, inconvenience, loss of dignity, and emotional distress;

   c. Punitive damages are at the maximum allowable by West Virginia law;

   d. All attorney fees and costs incurred in prosecuting these claims;

   e. Pre-judgment and post-judgment interest;

   f. All other legal and equitable relief that this Court deems appropriate or that may be available under applicable law; and

WHEREFORE, Plaintiff Maria Barnhart demands judgment against Defendant in such damages as will fully and sufficiently compensate her for all of her injuries and losses together with punitive damages, reasonable attorney's fees, pre- and post-judgment interest, costs, and any other further relief as this Court deems just and proper.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**MARIA BARNHART,**
By Counsel,

/s/ Philip A. Reale, II
Philip A. Reale, II (WVSB #11372)
Law Office of Philip A. Reale, PLLC
2220 Washington St. E, Suite 1
Charleston, West Virginia  25311
P – (304) 342-1891
F – (304) 342-1893
philip@wvreale.com